UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NORMAN DURHAM, | Civil Action No.: 18-10915 |
| | Honorable Marianne O. Battani |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

# REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 15, 19]

Plaintiff Norman Durham appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence and thus **RECOMMENDS** that:

- Durham's motion [ECF No. 15] be **DENIED**;
- the Commissioner's motion [ECF No. 19] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Durham's Background and Disability Applications

Born July 13, 1977, Durham was 37 years old on the date of application. [ECF No. 9-2, Tr. 19]. He has no past relevant work. [*Id.*]. Durham claims disability due to a pinched nerve, asthma, learning disability and depression. [ECF No. 9-3, Tr. 65].

After a hearing on January 3, 2017, during which Durham and a vocational expert (VE) testified, the ALJ found that Durham was not disabled. [ECF No. 9-2, Tr. 10-64]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-6]. Durham timely filed for judicial review. [ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

3

Applying this framework, the ALJ concluded that Durham was not disabled. At the first step, she found that Durham had not engaged in substantial gainful activity since the application date, March 20, 2015. [ECF No. 9-2, Tr. 12]. At the second step, she found that Durham had the severe impairments of "degenerative disc disease, asthma, depression, learning disability [and] anxiety disorder." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 13-16].

Between the third and fourth steps, the ALJ found that Durham had the RFC to perform light work, except that he is:

> able to lift ten pounds frequently, 20 pounds occasionally; can sit for six to eight hours of eight hours; can stand and/or walk eight out of eight hours. [He] retains the capacity to ascend and descend ramps and stairs, but cannot maintain balance on ladders, climb ropes, or scaffolds; he should avoid exposure to extremes in cold, wetness, and vibrations, and hazards such as machinery or heights. He would need to avoid only excessive amounts of environmental pollutants. [He] retains sufficient attention and concentration to understand, remember, and follow simple instructions and is capable of doing low stress, unskilled work on a sustained basis. Work should be simple and routine. Low stress is defined as jobs that do not require a specific production rate, involve no hazardous conditions, and few if any workplace changes and requires no more than simple workplace judgment or decision-making. (sic) Involving three of four step processes. Cannot perform work requiring more than occasional public contact or more than occasional interaction with co-workers.

4

[*Id.*, Tr. 16-17]. At step four, the ALJ found that Durham did not have past relevant work. [*Id.*, Tr. 19]. At the final step, after considering Durham's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Durham could perform, including positions as garment sorter, nut and bolt assembler, and cleaner/housekeeper, rendering a finding that he was not disabled. [*Id.*, Tr. 19-20].

## II.     ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Durham argues that the RFC relating to his back, neck, and upper extremity impairment is not supported by substantial evidence.[2] He contends that, in crafting the RFC, the ALJ ignored the significant findings from the August 2015 MRI and the fact that conservative treatment measures, specifically steroid injections and physical therapy, had failed. [ECF No. 15, PageID.435-36]. Durham also asserts that the ALJ had a duty to develop the factual record, and erred by drawing conclusions from the lack of those records. Durham challenges the ALJ's reliance on the lack of noted physical limitations from any treating or examining physician. [*Id.*, PageID.436-39]. Finally, Durham argues that the ALJ erred by failing to evaluate Durham's reasons for refusing surgery before relying on the refusal in her determination. [*Id.*, PageID.437-48]. The Court disagrees and recommends that the ALJ's decision be affirmed.

### A.

The ALJ did not ignore Durham's MRI findings; she specifically noted the August 2015 diagnostic testing and the cervical degenerative disc disease it revealed. [ECF No. 9-2, Tr. 18]. But this diagnosis alone does

---

[2] Durham does not contest the ALJ's findings about his other severe impairments and has thus waived any challenge relative to his asthma or mental impairments. *See Swain v. Comm'r of Soc.Sec.*, 379 F.App'x 512, 517-18 (6th Cir. 2010).

not dictate a finding of disability or for greater physical restrictions.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (a diagnosis says nothing about its disabling effects).  And as noted by the Commissioner, neither the MRI findings nor any of the treatment records provide any recitation of physical limitations imposed by Durham's diagnosis.

Durham argues that the lack of work restrictions in his treatment notes is not significant because Durham's treaters knew he was unemployed, deeming such restrictions unnecessary. [ECF No. 15, PageID.439].  But Durham's treatment notes are replete with references to his continuing efforts to find employment.  [ECF No. 9-7, Tr. 274, 284, 291, 303, 307, 313, 323, 340, 351, 354, 359, 362, 366].  These entries routinely attribute Durham's difficulty in finding a job to his status as both a convicted felon and a registered sex offender, and to at least one failed drug test; they cite his physical impairments as an impediment only to manual labor. [*See id.*, Tr. 284, 319, 340, 354, 366]. Durham regularly discussed his ongoing job-seeking efforts with his treaters, belying his assertion that unemployment obviated any need for physical restrictions from them. And applying for jobs "is obviously not consistent with allegations of disabling" limitations. *Villarreal v. Comm'r of Soc.Sec.*, 2014 WL 6750327, at *7 (E.D. Mich., Nov. 30, 2014). Finally, Durham bears the burden of establishing

7

more restrictive RFC limitations than those assessed by the ALJ. *See Jordan v. Comm'r of Soc.Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

**B.**

Durham argues that the ALJ improperly evaluated the intensity, persistence, and limiting effects of his symptoms by concluding that he received only conservative treatment—pain medication—for his neck and back symptoms. He objects to the ALJ's finding that "[t]here is no record of physical therapy or injections or other treatment modalities" despite references to the failure of both physical therapy and steroid injections in the August 2015 treatment note from the neurosurgery clinic. [ECF No. 9-2, Tr. 18; ECF No. 9-7, Tr. 326-27]. Durham argues that the ALJ was obligated to access records from his prior SSI claim that would corroborate this unsuccessful treatment. [ECF No. 15, PageID.436].

But as asserted by the Commissioner, the attorney representing Durham at the hearing confirmed in writing that she was unable to obtain more documentation about Durham's treatment and that the record was complete. [ECF No. 9-6, Tr. 229]. Thus, the ALJ had no further obligation to develop the record. *See Gerrick v. Comm'r. of Soc. Sec.*, 2016 WL 5369620, at *2–3 (E.D. Mich. Sept. 26, 2016), *aff'd*, 2017 WL

8

5992235 (6th Cir. Aug. 14, 2017) (claimant has the burden to seek out specific evidence to support her claim). More importantly, the records at issue were from treatment more than five years before this decision issued. The Court agrees with the Commissioner that evidence from the prior claim would have little bearing on Durham's current status.

The current record is clear: Durham did not undergo physical therapy or steroid injections for his symptoms after his alleged on-set date; he considered, but ultimately declined the suggested surgery; and managed his pain conservatively with over-the-counter medication. [ECF No. 9-7, Tr. 326, 359]. The ALJ properly considered the conservative nature of Durham's treatment in evaluating the intensity, persistence and limiting effects of Durham's symptoms. *See Bentley v. Comm'r of Soc.Sec.*, 23 F.App'x 434, 435-36 (6th Cir. 2001); SSR 16-3p, 2016 WL 1119029, at *1.

## C.

Finally, Durham argues the ALJ erred by failing to consider his reasons for refusing surgery before relying on the refusal in her determination. But Durham mischaracterizes the ALJ's decision; she did not base her decision to deny Durham benefits on his refusal to undergo

9

corrective surgery. On this issue, *Young v. Berryhill*, 2018 WL 1914732, at *7 (W.D. Ky. Apr. 23, 2018) is instructive.

In *Young*, the court applied 20 C.F.R. § 404.1530(b), which states, "If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." The *Young* court found that the ALJ did not rely on this regulation to deny benefits, but merely stated in a purely historical reference that the plaintiff refused surgery as a possible treatment option. *Young*, 2018 WL 1914732, at *7. "Accordingly, we do not have a situation where the Commissioner denied a claim for benefits based on the refusal of a claimant to undergo a corrective surgery which had a reasonable probability of curing a severe impairment." *Id.*

The same holding is appropriate here. Durham discussed possible surgery as a treatment option, but he was not prescribed surgery. [ECF No. 9-7, Tr. 327, 339]. And the ALJ noted Durham's refusal to consider surgery during her comprehensive discussion of his conservative treatment, [ECF No. 9-2, Tr. 17-18], but she did not base her decision to deny benefits on Durham declining surgery. Thus, § 404.1530(b) is inapplicable and Durham's complaint that the ALJ did not consider his good reasons for refusing surgery is off the mark.

10

As noted in *Young,* ALJs are charged with evaluating the intensity and persistence of a claimant's subjective symptoms, and must consider the claimant's "treatment, other than medication, for relief of pain or other symptoms," among other factors. *Young,* 2018 WL 1914732, at *7 (citing SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016)). The ALJ properly considered within her subjective symptom analysis Durham's history of conservative treatment, including his decision to decline surgery as an option. *Id.* Durham's argument otherwise should be rejected.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Durham's motion [ECF No. 15] be **DENIED**; that the Commissioner's motion [ECF No. 19] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

Dated: February 6, 2019

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.